1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  MICHAEL SAVETSKY, individually and )  Case No. 14-03514 SC
   on behalf of all others similar )
10 situated,                        )  ORDER GRANTING MOTION TO
                                     )  COMPEL ARBITRATION
11            Plaintiff,             )
                                     )
12      v.                           )
                                     )
13 PRE-PAID LEGAL SERVICES, INC.     )
14 d/b/a LegalShield,                )
                                     )
15            Defendant.             )
                                     )
16                                   )
                                     )
17                                   )
                                     )
18 _____ )

19

20 **I.    INTRODUCTION**

21     Now before the Court is Defendant LegalShield's[1] motion to

22 compel Plaintiff Michael Savetsky to arbitrate his claims in this

23 putative consumer class action. ECF Nos. 40 ("Mot."). The motion

24 is fully briefed, ECF Nos. 53 ("Opp'n"), 57 ("Reply"), including a

25 full round of supplemental briefing, ECF Nos. 60 ("Supp. Mot."), 61

26 ("Supp. Opp'n"), 63 ("Supp. Reply"), and because it is appropriate

27 _____
   [1]  Defendant is actually named Pre-Paid Legal Services, Inc., but
28 does business as LegalShield. For simplicity the Court will refer
   to Defendant as LegalShield.

for consideration without oral argument under Civil Local Rule 7-1(b).  The hearing has already been VACATED per ECF No. 65.  For the reasons set forth below, the motion is GRANTED.

**II.   BACKGROUND**

This is a putative consumer class action alleging that LegalShield improperly charged recurring payments to its California members for pre-paid legal services without providing sufficient consent or disclosure.  To provide legal services to its members, LegalShield contracts with law firms in the states in which it operates and, in exchange for a monthly fee, gives members access to that network of law firms for certain types of legal services.

While LegalShield memberships are available directly to consumers through its website, memberships are primarily sold through "sales associates" -- independent contractors who sign up to sell LegalShield memberships in exchange for commissions.  ECF No. 42 ("Pinson Decl.") at ¶ 6.  While LegalShield did not realize it until recently, Savetsky's involvement with LegalShield began when he applied to be a sales associate online through an existing LegalShield sales associate.  After becoming a sales associate, he then also purchased a LegalShield membership of his own.

The Court previously denied a motion to compel arbitration under LegalShield's membership agreement, finding that Savetsky never assented to the arbitration provision.  ECF No. 33 ("Prior Order") at 14.  After the Court denied that motion, LegalShield discovered that even prior to becoming a member, Savetsky signed up to be a sales associate.  In becoming a sales associate, LegalShield contends Savetsky entered into an "associate agreement"

United States District Court
For the Northern District of California

containing a separate and enforceable arbitration provision.  <u>See</u>

Pinson Decl. Ex. A ("Associate Agreement") at 6.  The entire

provision is lengthy, but the most relevant portion provides that:

> [a]ll disputes and claims related to LegalShield, the
> Associate Agreement, these Policies and Procedures and
> any other LegalShield policies, products and services,
> the rights and obligations of an Associate and
> LegalShield, or any other claims or causes of action
> between the Associate or LegalShield or any of its
> officers, directors, employees or affiliates, whether
> statutory in tort in contract or otherwise, shall be
> settled totally and finally by arbitration in Oklahoma
> City, Oklahoma, in accordance with the Commercial
> Arbitration Rules of the American Arbitration
> Association.    However, Associate understands and
> expressly agrees that LegalShield may seek a temporary
> restraining order and/or preliminary injunction in
> state or federal court to maintain the status quo
> pending determination of the dispute.    If any
> Associate files a claim or counterclaim against
> LegalShield or any of its officers, directors,
> employees or affiliates in any such arbitration, an
> associate shall do so only on an individual basis and
> not with any other Associate or as part of a class
> action . . . .

<u>Id.</u> at ¶ 23.  As a result, LegalShield asks the Court to compel

Savetsky to arbitrate the claims he asserts in this case in an

individual arbitration, and stay or dismiss the case pending the

resolution of that individual arbitration.  Savetsky opposes,

arguing that the Court lacks jurisdiction to compel arbitration,

the agreement is unenforceable, or it does not cover the claims at

issue in this case.

In reviewing the underlying agreement, the Court previously

noted that the relevant Associate Agreement -- which includes the

arbitration clause now at issue -- stated that it "will be governed

by and construed in accordance with the laws of the State of

Oklahoma."  ECF No. 42 ("Pinson Decl.") at 6, ¶ 23.  Accordingly,

the Court ordered a round of supplemental briefs, ECF No. 58, which

the parties have provided.  Defendant -- who during the initial round of briefs agreed that California law applied -- now asserts Oklahoma law should be applied, whereas Plaintiff continues to seek the application of California law.

**III. <u>LEGAL STANDARD</u>**

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for any order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.  The FAA embodies a policy that generally favors arbitration agreements. <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). The burden on a motion to compel arbitration is on the party opposing arbitration, <u>Edwards v. Metropolitan Life Ins. Co.</u>, No. C 10-03755 CRB, 2010 WL 5059553, at *4 (N.D. Cal. Dec. 6, 2010) (citing <u>Shearson/Am. Express, Inc. v. McMahon</u>, 482 U.S. 220, 227 (1987)), and the Court must resolve any doubts in favor of arbitration.  <u>See</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985).

To determine whether a valid arbitration agreement exists, we "apply ordinary state-law principles that govern the formation of contracts." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).  Where the parties do not agree on which state law governs, the court makes the determination by "using the choice-of-law rules of the forum state, which in this case is California." <u>Pokorny v. Quixtar, Inc.</u>, 601 F.3d 987, 994 (9th Cir. 2010).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   **IV.   DISCUSSION**

2       Unlike the prior motion to compel arbitration, Plaintiff

3   Savetsky does not argue that he did not assent to the arbitration

4   provision contained in the Associate Agreement.  Instead, he

5   contends that LegalShield's motion should be denied because: (1) it

6   seeks to re-litigate arguments the Court rejected in the prior

7   motion to compel arbitration, (2) the Court lacks jurisdiction to

8   decide the motion to compel, (3) the parol evidence rule bars

9   consideration of anything aside from the specific membership

10  agreement at issue in Plaintiff's substantive claims, (4) the

11  Associate Agreement by its own terms does not apply to Plaintiff's

12  claims, and (5) even if the agreement does apply to his claims, it

13  is unconscionable and thus unenforceable.

14      The Court will address the jurisdictional and relitigation

15  concerns, and then evaluate choice-of-law before turning to the

16  arguments on parol evidence, the scope of the associate agreement,

17  and unconscionability.

18      **A.   Jurisdiction**

19      Section 4 of the Federal Arbitration Act provides for "[a]

20  party aggrieved by the alleged failure, neglect, or refusal of

21  another to arbitrate under a written agreement for arbitration may

22  petition any United States district court which, save for such

23  agreement, would have jurisdiction under Title 28, . . . for an

24  order directing that such arbitration proceed in the manner

25  provided for in such agreement."  9 U.S.C. § 4 (emphasis added).

26  Once filed, the court must determine whether a valid agreement to

27  arbitrate exists and, if so, "make an order directing the parties

28  to proceed to arbitration in accordance with the terms of the

**United States District Court**
For the Northern District of California

1  agreement."  Id.  Finally, Section 4 states that "[t]he hearing and

2  proceedings, under such agreement, shall be within the district in

3  which the petition for an order directing such arbitration is

4  filed."  Id.

5       Seizing on the final quoted language, Plaintiff argues that

6  because the Associate Agreement provides for arbitration only in

7  Oklahoma City, Oklahoma, LegalShield may only seek to compel

8  arbitration there.  Thus, he concludes, "this Court has no

9  jurisdiction to grant Defendant's motion to compel."  Opp'n at 9.

10      Plaintiff is mostly incorrect.  While he rightly points out

11 that the Court has authority only to order arbitration within the

12 Northern District of California, that does not mean the court lacks

13 jurisdiction to compel arbitration at all.  See Textile Unlimited,

14 Inc. v. A., BMH & Co., Inc., 240 F.3d 781, 785 (9th Cir. 2001)

15 ("[B]y its terms, [Section] 4 only confines the arbitration to the

16 district in which the petition to compel is filed.  It does not

17 require that the petition be filed where the contract specified

18 that the arbitration should occur.") (emphasis added) (citing

19 Cont'l Grain Co. v. Dant & Russell, 118 F.2d 967, 969 (9th Cir.

20 1941)).  On the contrary, if the Court finds that a valid agreement

21 to arbitrate exists, the FAA requires the Court to compel

22 arbitration.  See 9 U.S.C. § 4 ("The court . . . , upon being

23 satisfied that the making of the agreement for arbitration . . . is

24 not in issue, . . . shall make an order directing the parties to

25 proceed to arbitration . . . .") (emphasis added).  At the same

26 time, however, Ninth Circuit precedent prevents the Court from

27 ordering the parties to arbitrate in their chosen venue when, as

28 here, the motion to compel arbitration is filed outside the

**United States District Court**
For the Northern District of California

1   district encompassing that venue.  See Cont'l Grain, 118 F.2d at

2   968-69; see also Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-

3   0715-SC, 2012 WL 3757486, at *5 (N.D. Cal. July 5, 2012); Homestake

4   Lead Co. v. Doe Run Res. Corp., 282 F. Supp. 2d 1131, 1143-44 (N.D.

5   Cal. 2003).[2]

6        In short, while the Court has jurisdiction to compel

7   arbitration, it lacks jurisdiction to compel arbitration in

8   Oklahoma City.  As a result, this argument is unavailing.

9        **B.   Relitigation**

10       Next, Plaintiff contends that LegalShield's motion to compel

11  should be denied as it is an improper attempt to relitigate issues

12  the Court rejected when it denied LegalShield's motion to compel

13  under the membership contract and denied leave to file a motion for

14  reconsideration of that order.  See Mot. at 7-8; see also Prior

15  Order at 14; ECF No. 48 ("Recons. Mot.") at 9.

16       The Court disagrees.  First, no authority the Court has found

17  states that the denial of a prior motion to compel arbitration

18  under a different agreement somehow bars the proponent of the prior

19  motion from subsequently asserting that a different contract

20  contains an enforceable arbitration provision.  True, a party may

21  waive its right to file a motion to compel arbitration if, while

22  knowing of its right to compel arbitration, it acts inconsistently

23  with that right, and prejudices the opposing party.  See Sovak v.

24  Chugai Pharmaceutical Co., 280 F.3d 1266, 1270 (9th Cir. 2002).

25  But LegalShield has consistently and promptly asserted its argument

26  that the parties agreed to arbitrate their disputes, whether in the

27  ─────────────────────

28  [2] Plaintiff's argument is still further weakened by the Court's
    ultimate conclusions in this case, which includes striking the
    language which requires that arbitration be conducted in Oklahoma.

**United States District Court**
For the Northern District of California

1   membership agreement or the associate agreement.  Furthermore,

2   contrary to Savetsky's characterization of the Court's prior

3   orders, the Court has never addressed whether the arbitration

4   provision in the associate agreement is valid and enforceable.  As

5   a result, Plaintiff's suggestions that this is simply an improper

6   motion for reconsideration or an attempt to relitigate issues

7   previously decided are misplaced.

8        **C.   Choice-of-Law**

9        Plaintiff urges strict application of California law on the

10  basis of waiver, that the contract was one of adhesion, and that

11  the choice of law provision cannot be enforced under the principles

12  of Section 187(2) of the Restatement (Second) of Conflict of Laws.

13  Failing that, Plaintiff argues that the arbitration clause is

14  unenforceable even under Oklahoma law, and even if enforceable that

15  the arbitration clause should not be read to apply to the

16  Membership Contract.  Defendant disputes all such arguments.  The

17  Court will address the first three arguments in turn.  The fourth

18  argument is moot, and thus the Court does not reach it.  The fifth

19  is substantially similar to and thus addressed later in connection

20  with Plaintiff's arguments relating to scope of the agreement.

21       **1.   Waiver**

22       Plaintiff argues that where a party fails to assert the laws

23  contained in a choice of law provision, the forum state's laws

24  apply by default.  See Peleg v. Neiman Marcus Grp., Inc., 204 Cal.

25  App. 4th 1425, 1442 (2012).  Therefore, had the Court never ordered

26  supplemental briefing, Plaintiff would be correct that default

27  application of California law would be proper.  Here, however, the

28  Defendant has asserted the laws from the choice-of-law provision.

**United States District Court**
For the Northern District of California

1   While the Court does question why Defendant waited so long to

2   assert their choice of law and notes that Defendant did previously

3   agree to apply California law, the Court cannot now entirely ignore

4   Defendant's choice to assert an on-its-face valid provision of the

5   contractual agreement when filing a briefing the Court itself

6   specifically requested.  Accordingly, there was no waiver.

7               **2.   Adhesion Contracts**

8        Adhesion contracts are frequently enforced within California

9   and throughout the United States.  Plaintiff's assertion that

10  substantial injustice results from such a contract runs counter to

11  the Supreme Court decision in Concepcion and other authorities.

12  See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011); Reply

13  at 7.  The Court has previously engaged in a detailed analysis of

14  law relating to clickwraps, shrinkwraps, and browsewraps.  Order of

15  the Court filed February 12, 2015, ECF No. 33, 6-8.  The contract

16  at issue bears a few of the hallmarks of browsewrap (Plaintiff had

17  to affirmatively click a link to see the terms and conditions), but

18  otherwise looks like clickwrap.  Plaintiff sought out the all-

19  digital agreement, was asked whether he agreed to the terms

20  associated -- where the terms were hyperlinked within the question

21  itself should he have chosen to review them -- and then clicked his

22  acknowledgement and agreement to the terms of the contract.  This

23  shows sufficient "mutual manifestation of assent, whether by

24  written or spoken word or by conduct, [to satisfy] the touchstone

25  of contract."  Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1175

26  (9th Cir. Aug. 18, 2014).  Nguyen specifically cites approvingly

27  that Courts find the requisite notice "where the user is required

28  to affirmatively acknowledge the agreement before proceeding with

**United States District Court**
For the Northern District of California

1    use of the website." <u>Id.</u> at 1176.   Therefore, the Court rejects

2    Plaintiff's adhesion argument at this juncture, though revisits the

3    issue in connection with unconscionability.

4               **3.   Restatement Principles**

5         "California courts shall apply the principles set forth in

6    Restatement [S]ection 187, which reflects a strong policy favoring

7    enforcement of [choice-of-law] provisions." <u>Nedlloyd Lines B.V. v.</u>

8    <u>Superior Court</u>, 3 Cal. 4th 459, 464-465 (Cal. 1992); <u>see also</u> <u>Wash.</u>

9    <u>Mut. Bank, FA v. Super. Ct.</u>, 24 Cal. 4th 906, 914-916 (Cal. 2001)

10   (applying <u>Nedlloyd</u>); <u>Pokorny</u>, 601 F.3d at 994 (applying <u>Wash. Mut.</u>

11   <u>Bank</u>).   Section 187(2) of the Restatement (Second) of Conflict of

12   Laws requires enforcement of choice-of-law provisions except where:

13        (a) the chosen state has no substantial relationship
          to the parties or the transaction and there is no
14        other reasonable basis for the parties choice, or

15        (b) application of the law of the chosen state would
          be contrary to a fundamental policy of a state which
16        has materially greater interest than the chosen state
          in the determination of the particular issue.
17

18   Courts are first to check prong (a), then consider whether the

19   foreign state's laws are contrary to a fundamental policy, and only

20   then consider whether California has a "materially greater

21   interest" in applying its own laws.   <u>See</u> <u>Bridge Fund Capital Corp.</u>

22   <u>v. Fastbucks Franchise Corp.</u>, 622 F.3d 996, 1002-03 (9th Cir.

23   2010).

24               **i.   Substantial Relationship**

25        Here, Defendant is an Oklahoma corporation whose principle

26   place of business is in Oklahoma.   California courts and the Ninth

27   Circuit have endorsed that this is sufficient analysis for finding

28   a substantial relationship and reasonable basis for the choice of

law at the initial step.  <u>See, e.g.</u>, <u>Peleg</u>, 204 Cal. App. 4th at
1446-47; <u>Ruiz v. Affinity Logistics Corp.</u>, 667 F.3d 1318, 1323 (9th
Cir. 2012).  Accordingly, the Court finds that there is a
"substantial relationship" to the parties and a "reasonable basis"
for the parties' choice of law.

### ii.  Fundamental Policy

The Court next considers whether Oklahoma's laws are contrary
to a fundamental policy.  Here, Plaintiff offers several potential
policies that might be frustrated: (1) that there are differences
between the California and Oklahoma legal standards for
unconscionability; (2) that Oklahoma law permits unilateral
contract modifications whereas California law does not; and (3)
Oklahoma's consumer protection law is far less strong than
California's, which includes a robust punitive scheme and anti-
waiver provisions.  The Court finds the first argument unlikely to
reflect a fundamental policy, rejects the second argument, but
agrees with the third argument, and therefore finds that Oklahoma's
laws are contrary to a fundamental policy.

The Court finds the differences between the California and
Oklahoma law to be real but minimal.  The FAA provides that
arbitration agreements are "valid, irrevocable, and enforceable
save upon such grounds as exist at law or in equity for the
revocation of any contract."  9 U.S.C. § 2.  This "savings clause"
preserves generally-applicable state law contract defenses like
unconscionability, provided they do not single out arbitration
agreements or otherwise undermine the purposes of the FAA.  <u>See</u>
<u>Concepcion</u>, 131 S. Ct. at 1748.
///

**United States District Court**
For the Northern District of California

1    Under California law, unconscionability "'has both a

2  procedural and a substantive element, the former focusing on

3  oppression or surprise due to unequal bargaining power, the latter

4  on overly harsh or one-sided results.'"  Kilgore v. KeyBank Nat'l

5  Ass'n, 673 F.3d 947, 963 (9th Cir. 2012) (quoting Armendariz v.

6  Found. Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (Cal. 2000)).

7  Conversely, unconscionability under Oklahoma law does not

8  separately consider procedural versus substantive factors:

9       The basic test of unconscionability of a contract is
        whether under the circumstances existing at the time
10      of making of the contract, and in light of the general
        commercial background and commercial needs of a
11      particular case, clauses are so one-sided as to
        oppress or unfairly surprise one of the parties.
12      Unconscionability has generally been recognized to
        include an absence of meaningful choice on the part of
13      one of the parties, together with contractual terms
        which are unreasonably favorable to the other party.
14

15  Barnes v. Helfenbein, 548 P.2d 1014, 1020 (Okla. 1976).

16    Plaintiff suggests this has been recently interpreted to

17  require a showing of "gross inequality of bargaining power."  Been

18  v. O.K. Indus., Inc., 495 F.3d 1217, 1237 (10th Cir. 2007).

19  However, further review shows that "gross inequality" is just one

20  circumstance that usually leads to a finding of unconscionability,

21  rather than an updated test.  Id.[3]  Thus the standards do appear

22  substantially similar.  Moreover, differences resulting from

23  _____

24  [3] Both Barnes and Been reference or expound upon Williams v.
    Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)
25  ("In many cases the meaningfulness of the choice is negated by a
    gross inequality of bargaining power. . . . Ordinarily, one who
26  signs an agreement without full knowledge of its terms might be
    held to assume the risk that he has entered a one-sided bargain.
27  But when a party of little bargaining power, and hence little real
    choice, signs a commercially unreasonable contract with little or
28  no knowledge of its terms, it is hardly likely that his consent, or
    even an objective manifestation of his consent, was ever given to
    all the terms.").

United States District Court
For the Northern District of California

1   application of a procedural law like unconscionability are unlikely

2   to reflect a fundamental policy choice.

3       Defendant asks the Court to accept that "there is no

4   meaningful difference in the standards."  Supp. Reply at 2.  While

5   there might be some reason to suspect Defendant is in error -- that

6   the laws of the two states are not the same -- such a finding would

7   favor application of California's law.  Even so, the Court finds

8   below that a different fundamental policy at issue, so the Court

9   ultimately does apply California law, mooting this concern.

10      Next, Plaintiff argues that permitting unilateral contract

11  modifications is contrary to a fundamental policy.  Even taking as

12  true Plaintiff's assertion that Oklahoma law permits unilateral

13  contract modifications whereas California law does not, Plaintiff's

14  arguments fail.

15      The Court agrees that, in this limited instance, Concepcion's

16  preemption rulings will not invalidate the choice of law.  See

17  Concepcion, 131 S. Ct. at 1748.  In Mortenson, a long-standing

18  Montana contract policy was found preempted by the FAA per

19  Concepcion because the policy would often operate to invalidate

20  arbitration clauses.  Mortensen v. Bresnan Communs., LLC, 722 F.3d

21  1151, 1161 (9th Cir. 2013).  Plaintiff asserts Mortenson also

22  stands for the principle that fundamental policies are based on

23  contract law and not limited to arbitration.  Supp. Oppn at 5.

24  Mortenson clarified that it found the general contract law

25  preempted because, as interpreted by the Montana Supreme Court, it

26  would always disfavor arbitrations.  Mortenson, 722 F.3d at 1160.

27      Here, there is a legitimate concern that laws of another state

28  could disfavor application of choice-of-laws in favor of another

**United States District Court**
For the Northern District of California

state's laws.  However, unlike in <u>Mortensen</u>, there is no indication
or history of use within California connecting the disallowing of
unilateral contracts with the invalidation of otherwise permissible
arbitration clauses.  The choice-of-law issue here is no more
concerning as related to arbitration than it would be if this were
an agreement for consideration by any other judicial body.  By the
same token, there is no indication that this is a fundamental
policy.[4]  The Court thus turns back to the restatement: "[a] forum
will not refrain from applying the chosen law merely because this
would lead to a different result than would be obtained under the
local law of the state of the otherwise applicable law."
Restatement (Second) of Conflict of Laws, § 187, comment g.
Therefore, while the Court agrees with Plaintiff's argument that
<u>Concepcion</u> does not change the California unconscionability
analysis or in this specific instance necessitates Federal
preemption, the Court's analysis does not provide Plaintiff the
desired relief.  The Court finds that this particular difference of
contract law does not constitute a fundamental policy and is
therefore not substantive.[5]

///

---

[4] If there was such a policy, it might be the type of thing that
would be preempted under the Court's analysis of <u>Concepcion</u>.
[5] Defendant suggests that contract law is, generally, not a
fundamental policy.  <u>Brack v. Omni Loan Co., Ltd.</u>, 164 Cal. App.
4th 1312, 1323-24 (Cal. App. 4th Dist. 2008).  However, <u>Brack</u>
reaches the conclusion that general rules of contract law will
"rarely" be based on its analysis of whether parties can legally
contract to avoid a policy or whether such a contract would violate
statute -- an analysis which features application of <u>Discover Bank</u>
<u>v. Super. Ct.</u>, 36 Cal. 4th 148, 174 (2005).  However, the rule from
<u>Discover Bank</u> was expressly found preempted by the United States
Supreme Court in <u>Concepcion</u>. 131 S. Ct. at 1753.  Therefore, the
Court finds <u>Brack</u> unpersuasive and follows the binding precedent of
<u>Mortensen</u>.

**United States District Court**
For the Northern District of California

The Court agrees, however, with the Plaintiff's argument that there is a substantial interest at stake in application of California versus Oklahoma's consumer protection law.  The Court agrees that Oklahoma's law is far less strong than California's, and Plaintiff correctly cites the Court's pre-Concepcion order. Supp. Opp'n at 5.  Antiwaiver provisions of the California Legal Remedies Act (such as those as cited by Plaintiff) cannot be used to preclude arbitration agreements.  See Concepcion, 131 S. Ct. at 1747-48.  But where the California legislature included an antiwaiver provision, it is reasonable to conclude that they were attempting to create a fundamental right.  If interpreted to effectuate disfavoring arbitration, certainly the FAA per Concepcion would preempt the statute and language.  Here, however, the antiwaiver provision is cited merely to underscore the importance of the California law, and the right lost is all protections afforded under the law.  The issue, then, is that choice-of-law results in a fundamental policy harm irrespective of whether this case is heard at arbitration or by a judge.

Thus the Court concludes there is a fundamental policy conflict in the laws of Oklahoma versus California.

### iii. Materially Greater Interest

If there was no such conflict of laws, the Court would be required to enforce the parties' choice of law.  Peleg, 204 Cal. App. 4th at 1446.  Where, as here, there is a conflict, the last step in the choice-of-laws analysis is whether California has a:

> 'materially greater interest than the chosen state in the determination of the particular issue . . . .' If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we

1   will decline to enforce a law contrary to this state's
    fundamental policy.

2   Id. (quoting in part Nedlloyd, 3 Cal. 4th at 466).

3       Having found a substantial interest, the Court is satisfied

4   California's interest is material, and thus is concerned here with

5   whether its interest is greater than that of Oklahoma.   In answer

6   thereto, the Ninth Circuit's analysis in Pokorny is highly

7   instructive.   There, Defendants argued Quixtar ADR provisions

8   should have been evaluated using Michigan's unconscionability law

9   vice California's.   Pokorny 601 F.3d at 994.   Pokorny differs with

10  our case here in that it applied a governmental interest test to

11  which the parties had, in effect, assented.   Id.   The second prong

12  of that test was examination of "each jurisdiction's interest in

13  the application of its own law under the circumstances of the

14  particular case to determine whether a true conflict exists."   Id.

15  at 994-95.   Defendants there argued Michigan had an interest

16  because it was the place of the corporate headquarters and Michigan

17  had an interest in providing its companies with a consistent body

18  of law on which they could rely nationwide.   However, Pokorny found

19  in favor of the Plaintiffs, three individuals from California, on

20  the following basis: they had no discernable connection to

21  Michigan; Michigan thus had little to no interest in applying its

22  own procedural unconscionability laws to their challenge;

23  California had a substantial interest in applying its procedural

24  laws; there was no true conflict of laws; and even had there been

25  one California's considerably stronger interest would prevail.   Id.

26  at 995-996.

27  ///

28  ///

16

**United States District Court**
For the Northern District of California

1   Here, the factual circumstances are almost identical to

2   Pokorny.[6]  Plaintiff is an associate bringing suit against an

3   employer under an arbitration clause.  He has never worked in

4   Oklahoma and never visited Oklahoma.  ECF No. 61-2, ¶¶ 3-4

5   ("Savetsky Supp. Decl.").  All his contact with the Defendant

6   Oklahoma corporation has been in and through California.  Oklahoma

7   thus has no greater interest in application of its procedural

8   unconscionability law here than Michigan had in Pokorny.  So too

9   California has as much interest in application of its procedural

10  law here as it did in Pokorny.  Accordingly, California thus has a

11  materially greater interest in applying its own laws.

12   Ruiz also favors a finding for Plaintiff.  See Ruiz, 667 F.3d

13  at 1324.  The test there, which is the same as the one applied

14  here, requires that for this third prong the Court "must analyze

15  the following factors: (1) the place of contracting; (2) the place

16  of negotiation of the contract; (3) the place of performance; (4)

17  the location of the subject matter of the contract; and, (5) the

18  domicile, residence, nationality, place of incorporation, and place

19  of business of the parties."  Id.  Here, all but the last factor

20  favors the Plaintiff.  He contracted, "negotiated" (or at least

21  agreed to) the contract, and performed the contract in California,

22  and the subject matter of the contract was all in California.  Also

23  like in Ruiz, there is no evidence suggesting Oklahoma has any

24  material interest in the resolution of this case.  Id. at 1324-25.

25  ///

26  _____

27  [6] The tests being applied are slightly different, but they are
    substantially similar, requiring determination of which state has
    the "materially greater interest."  Materiality has been determined

28  per the discussion above, leaving only the overlapping issue of
    which state's interest is greater.

**United States District Court**
For the Northern District of California

1   Therefore, the Court finds that California has a materially greater

2   interest in application of its laws.

3       Accordingly, the Court applies California law to the limited

4   question of whether or not the arbitration clause is enforceable or

5   unconscionable.[7]

6   **D.   Parol Evidence**

7       Plaintiff argues that the parol evidence rule bars LegalShield

8   from attempting to enforce the Membership Contract's arbitration

9   provisions by pointing to the arbitration provision in the

10  associate agreement.  This argument fails.  Under California law,

11  when parties enter into an integrated written agreement, extrinsic

12  evidence of a prior agreement may not be used to contradict or

13  alter the terms of the written agreement.  See Riverisland Cold

14  Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n, 291 P.3d 316,

15  318 (Cal. 2013); see also Cal. Code Civ. Proc. § 1856(a).[8]

16  However, LegalShield is not seeking to contradict or alter the

17  terms of the (latter) written membership agreement -- it is merely

18  seeking to enforce the terms of the (prior) associate agreement

19  _____

20  [7] Insofar as Defendants might desire to argue that the Oklahoma
    unconscionability standard may be more favorable to their case or

21  mandates a different result (as it does not differentiate between
    procedural and substantive unconscionability), the Court notes that

22  Defendant asks the Court to conclude that "there is no meaningful
    difference in the standards."  Supp. Reply at 2.  Therefore, even

23  had the Court accepted Defendant's arguments and applied Oklahoma
    law, Defendants must accept that the results would be the same.

24  That said, the Court need not consider and does not consider
    whether the clause would have been enforceable under Oklahoma law.

25  [8] Oklahoma law is similar.  The Oklahoma Supreme Court ultimately
    "declines to look beyond the four corners of the Contract to

26  examine the parties' intent further [when] the language employed is
    unambiguous."  Romine v. Pense (In re Estate of Metz), 2011 OK 26,

27  P13-14 (Okla. 2011) ("In the absence of fraud, accident, mistake or
    absurdity, the clear and explicit language embodied in the written

28  instrument governs in determining the parties' true intent."); see
    also 15 Okl. St. §§ 2A-202, 152, 154.

**United States District Court**
For the Northern District of California

1   without reference to any extrinsic evidence at all.  To put it
2   another way, LegalShield is not seeking to enforce the arbitration
3   provision in the (latter) <u>membership</u> agreement by pointing to the
4   arbitration provision in the (prior) associate agreement; it is
5   seeking to enforce the (prior) arbitration provision in the
6   <u>associate</u> agreement by pointing to the arbitration provision in the
7   (prior) associate agreement.  While in some instances an
8   integration clause might bar this approach, the Court has
9   previously (at Plaintiff's own urging) found that Plaintiff did not
10  consent to the membership agreement, and therefore <u>neither</u> side
11  would be bound by the terms therein -- the integration clause or
12  the arbitration clause.  Therefore, Plaintiff cannot now claim that
13  parol evidence or an integration clause can require limitation to
14  the terms of the membership agreement.  Moreover, even if the
15  membership agreement was still valid (which it is not), the terms
16  of the membership agreement are consistent with the associate
17  agreement insofar as both require arbitration.  <u>See</u> Order of the
18  Court filed February 12, 2015, ECF No. 33; ECF No. 42-3, Exhibit G
19  at 47.  As a result, the parol evidence rule is irrelevant.

20      **E.    <u>Scope of the Associate Agreement</u>**

21      Even if the Court finds the arbitration and choice-of-law
22  provisions valid, Plaintiff asserts that the terms of the associate
23  agreement do not apply to the separate Membership Contract.
24  Plaintiff is incorrect.  Plaintiff entered into the Associate
25  Agreement first.  The agreement, if valid, clearly contemplates
26  that arbitration shall be used for "[a]ll disputes and claims
27  related to LegalShield . . . products and services . . . or any
28  other claims or causes of action between the Associate or

**United States District Court**
For the Northern District of California

1   LegalShield . . . whether statutory in tort in contract or

2   otherwise . . . ."  Associate Agreement at 6.  The first quoted

3   clause on its own is likely broad enough to be sufficient, and

4   certainly the additional quoted clauses make it clear that an

5   Associate is subjecting to arbitration for almost anything at all

6   relating to LegalShield.  The scope of an arbitration provision is

7   governed by federal law.  See Tracer Research Corp. v. Nat'l Envtl.

8   Servs. Co., 42 F.3d 1292, 1294 (9th Cir. 1994).  Federal law

9   requires arbitration clauses be liberally construed, with all

10  doubts resolved in favor of arbitration.  See Chiron Corp. v. Ortho

11  Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); Simula,

12  Inc. v. Autoliv, Inc., 175 F.3d 716, 719-720 (9th Cir. 1999); see

13  also Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797-98

14  (10th Cir. 1995); P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861,

15  871 (10th Cir 1999).  Here, the language is even broader than the

16  cases cited by LegalShield that discuss "[a]ll disputes arising in

17  connection with this Agreement . . . ," or "[a]ny disputes related

18  to this Agreement or its enforcement . . . ," and, unlike those

19  cases, encompasses claims both related and unrelated to the

20  associate agreement.  See Simula, 175 F.3d at 720 (emphasis

21  omitted); In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-

22  1827 SI, 2011 WL 2650689, at *3-5 (N.D. Cal. July 6, 2011).

23      While the Court might be more sympathetic to Plaintiff's

24  argument if made by a member who then later became an associate, it

25  is not unreasonable for an associate to expect that he would be

26  bound by different and more stringent rules when he later becomes a

27  member (as compared to those who are solely members ).  This is

28  especially true where Savetsky knew or reasonably should have known

1  he had already agreed to some form of binding contract that may

2  have (and here did) limit his rights as to "products and services"

3  and "any other claims or causes of action" that Plaintiff had.

4  Therefore, Plaintiff's claims made in the posture of simply being a

5  member are bound by all valid provisions of his earlier signed

6  Associate Agreement.  Signing a later contract (in this instance)

7  did not release or reduce his existing obligations.  Because

8  Plaintiff's claims are clearly related to LegalShield (as opposed

9  to the associate agreement), relate to LegalShield products and

10 services, and are (at the very least) other claims between Savetsky

11 and LegalShield, this case clearly falls within the scope of the

12 arbitration clause in the associate agreement.

13     **F.    Unconscionability**

14     Plaintiff asserts that the associate agreement is

15 unconscionable, and hence unenforceable.  In California, a finding

16 of unconscionability requires "a 'procedural' and a 'substantive'

17 element, the former focusing on 'oppression' or 'surprise' due to

18 unequal bargaining power, the latter on 'overly harsh' or 'one-

19 sided' results." Concepcion, 131 S. Ct. at 1746 (citations

20 omitted).  For the reasons set forth below, the Court agrees that

21 parts of the associate agreement are unconscionable under

22 California law and therefore cannot be enforced.  However, because

23 the severability clause may operate to save the arbitration clause

24 and the Court is required to read the contract resolving any

25 ambiguity in favor of arbitration, the Court finds the severability

26 clause does operate to save the agreement to arbitrate.  Therefore,

27 despite ultimately striking some language as unenforceable, the

28 Court finds that an arbitration is required.

United States District Court
For the Northern District of California

The Court rejects Plaintiff's concerns over the size and length of the agreement. Two pages in all 8-point type is easily legible and is not so long that anything can be truly obfuscated by its placement. The Court is also satisfied that Plaintiff has been able to access a copy of the AAA rules, eliminating or minimizing any harm therefrom. Thus, any procedural unconscionability in failing to provide the AAA rules that may exist is minimal and does not substantially sway the Court's analysis.[9]

Plaintiff cites Chavarria v. Ralphs Grocery Store, 733 F.3d 916, 922 (9th Cir. 2013) for the proposition that a take-it-or-leave-it contract is procedurally unconscionable under California law. Chavarria goes on to find still greater procedural unconscionability in the circumstances of that case, where plaintiffs were required to agree to terms weeks after beginning a job, and where the terms applied irrespective of agreement. Id. at 923. However, Chavarria still finds that there was procedural unconscionability simply by virtue of being a take-it-or-leave-it, "standardized contract, drafted by the party of superior bargaining strength, that relegate[d] to the subscribing party only the opportunity to adhere to the contract or reject it." Id. Cases cited by Defendant to the contrary are all district court cases decided prior to Chavarria, which itself was decided after

---

[9] See A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 489 (1982) ("Generally, courts have not been solicitous of businessman in the name of unconscionability"); Captain Bounce v. Business Fin. Services, No. 11-CV-858 JLS (WMC), 2012 WL 928412 *7 (S.D. Cal. Mar. 19, 2012) ("Plaintiffs' status as merchants, not consumers, is undoubtedly a factor properly considered in the Court's unconscionability analysis, as it is reasonable to expect even an unsophisticated businessman to carefully read, understand, and consider all the terms of an agreement affecting such a vital aspect of his business.").

**United States District Court**
For the Northern District of California

1   Concepcion.  Reply at 7.  The Court must therefore decline to

2   follow these persuasive authorities in favor of binding precedent

3   from the Ninth Circuit.  Accordingly, the Court finds there is a

4   degree, albeit the lesser degree, of procedural unconscionability.

5        This in no way negates the Court's earlier finding rejecting

6   that adhesion alone makes the associate agreement invalid nor

7   impacts the Court's earlier finding that there is sufficient

8   "mutual manifestation of assent, whether by written or spoken word

9   or by conduct, [to satisfy] the touchstone of contract." Nguyen,

10  763 F.3d at 1175.  Rather, California unconscionability is a

11  sliding scale test.  Chavarria, 733 F.3d at 922.  Both procedural

12  and substantive unconscionability are required, and "greater

13  substantive unconscionability may compensate for lesser procedural

14  unconscionability." Id.  Thus the Court next considers whether

15  there was substantive unconscionability, and if so whether it was

16  to the degree necessary.

17       A contract term is not substantively unconscionable when it

18  merely gives one side a greater benefit; rather, the term must be

19  "so one-sided as to 'shock the conscience.'" Pinnacle Museum Tower

20  Assn. v. Pinnacle Market Development (US), LLC, 55 Cal. 4th 223,

21  246 (Cal. 2012).  Here, Plaintiff suggests that overly harsh, one-

22  sided results sufficient to meet this requirement can be found in

23  the unilateral rights provided to Defendant, the location of the

24  forum, and the costs Plaintiff might bear under the AAA Commercial

25  Rules.  The Court considers each in turn.

26       Plaintiff objects that the arbitration clause grants

27  unilateral rights only to the Defendant.  In relevant part, the

28  Associate Agreement states: "Associate understands and expressly

**United States District Court**
For the Northern District of California

1   agrees that LegalShield may seek a temporary restraining order

2   and/or preliminary injunction in state or federal court to maintain

3   the status quo pending determination of the dispute."  Associate

4   Agreement at 6.  Defendant provides an effective critique of

5   Plaintiff's argument, see Reply at 9-10, but fails to note that it

6   is the Defendant who initially sets the status quo, and thus one

7   might expect the status quo will more frequently favor the

8   Defendant.  Thus the Court is concerned that this clause does

9   provide the Defendant some advantage in being the only side which

10  may seek injunctive relief.  Moreover, if Defendant is correct that

11  both sides can still seek injunctive relief, there seems to be no

12  benefit to the clause.  The Court therefore finds that this clause

13  does create some amount of substantive unconscionability.  But the

14  Court also agrees with Defendant that the clause can be easily

15  severed -- a matter the Court will take up below.

16      Plaintiff also objects to the location of the forum in

17  Oklahoma.  The Associate Agreement states arbitrations "shall be

18  settled . . . by arbitration in Oklahoma City, Oklahoma. . . ."

19  Associate Agreement at 6.  The Court agrees with Plaintiff.

20  Defendant's decision not to enforce this provision now does not

21  change the fact that, upon entry into the contract, the provision

22  indicated a degree of substantial unconscionability.

23      Plaintiff also objects to costs it might bear under the AAA

24  Commercial Rules.  The Associate Agreement states arbitrations

25  "shall be settled totally and finally by arbitration . . . in

26  accordance with the Commercial Arbitration Rules of the American

27  Arbitration Association."  Associate Agreement at 6.  Chavarria is

28  again instructive.  There, the underlying district court "cited [as

1  problematic] the preclusion of institutional arbitration

2  administrators, namely AAA or JAMS, which have established rules

3  and procedures to select a neutral arbitrator." Chavarria, 733

4  F.3d at 923.   There, Ralphs imposed significant fees up-front on

5  each party seeking arbitration and structured the rules to ensure

6  that Ralphs would usually (if not always) get to pick the arbiter

7  and have certain innate advantages when going into arbitration.

8  See Chavarria, 733 F.3d 923-25.   No such concern exists here.

9  There is no fee splitting, merely use of the rules of a well-

10  respected neutral arbitration group.  Chavarria cited failure to

11  use such a group as problematic, and noted the Ninth Circuit has

12  failed to assign error where there was "a mere risk" that a party

13  might face a prohibitive cost.  Id. at 925-26 (citing Kilgore v.

14  KeyBank National Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (en

15  banc)).

16       Here, the agreement simply selects the ground rules.  There is

17  no inclusion of additional fees in the Associate Agreement beyond

18  those set rules, and the AAA rules provide for relief for those

19  unable to pay.  Absent evidence that Plaintiff cannot pay or

20  evidence that there is some mechanism designed to increase costs in

21  a manner designed to deprive Plaintiff of a day in court, there is

22  insufficient evidence of substantive unconscionability.

23       Finally, the Court turns to the Severability Clause.  The

24  Associate Agreement states that:

25           In  the  event  that  a  provision  of  the  Associate
             Agreement or these Policies and Procedures is held to
26           be  invalid  or  unenforceable,  such  provision  shall  be
             reformed  only  to  the  extent  necessary  to  make  it
27           enforceable,  and  the  balance  of  the  Agreement  and
             Policies  and  Procedures  will  remain  in  full  force  and
28           effect.

1  Associate Agreement at 6.  The FAA and <u>Concepcion</u> make clear that

2  any doubt or ambiguity in the contract should be resolved in favor

3  of arbitration.  Plaintiff cites that several California courts

4  have chosen to invalidate an entire contract on the basis of more

5  than one indication of substantive unconscionability.  <u>See</u> Reply at

6  24-25.  The Court recognizes that "an arbitration agreement

7  permeated by unconscionability, or one that contains unconscionable

8  aspects that cannot be cured by severance, restriction, or duly

9  authorized reformation, should not be enforced." <u>Armendariz</u>, 24

10 Cal. 4th at 126.  Here, however, the Court finds that there is a

11 reasonable means and basis to save the contract.  The Court has

12 already found that there was a sufficient "mutual manifestation of

13 assent" and dicta indicating acceptance of this precise type of

14 contract by the Ninth Circuit.  <u>See</u> <u>Nguyen</u>, 763 F.3d at 1175-76.

15 Enforcement of those portions not found (above) to contain

16 unconscionable agreements does not favor or disfavor either side in

17 a manner that runs contrary to the interests of justice.  <u>See</u>

18 <u>Armendariz</u>, 24 Cal. 4th at 126-27.  Therefore, the Court severs and

19 finds unenforceable the clause limiting injunctive relief to only

20 Defendant and locating any arbitration in Oklahoma.  Language

21 relating to filing orders in Oklahoma and consenting to

22 jurisdiction there does not foreclose other options (such as filing

23 an order with this Court) and thus do not yet pose any concern.

24 The remainder of the contract stands.

25

26 **V. <u>CONCLUSION</u>**

27     For the above reasons, the Court SEVERS and STRIKES the

28 language below with a cross-through from the associate agreement:

1.   "totally and finally by arbitration ~~in Oklahoma City, Oklahoma~~, . . . ."

2.   "~~However, Associate understands and expressly agrees that LegalShield may seek a temporary restraining order and/or preliminary injunction in state or federal court to maintain the status quo pending determination of the dispute~~."

The remainder of the associate agreement remains valid. Accordingly, the Court hereby ORDERS that parties proceed to binding arbitration in accordance with the (remaining) terms of the agreement.  The hearing and proceedings, under such agreement, shall be within this judicial district.  <u>See</u> 9 U.S.C. § 4.  The Court STAYS this case pending results of the above ordered arbitration.

Still-valid language in the associate agreement consents to entry of judgment in Oklahoma yet not in California, but does not actually foreclose enforcement in California.  Therefore, the stay notwithstanding, within 20 days of this order, the Court ORDERS Defendant to SHOW CAUSE why any judgment resulting from this arbitration cannot be filed in and enforced by the Court or another judicial body within California.  Alternatively, Defendant may during those same 20 days stipulate to the continued jurisdiction of the Court to enforce the results of the arbitration the Court has ordered herein.


IT IS SO ORDERED.


Dated: July 30, 2015

_____
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

27